## WALKER v. STATE.

No. A-11380. Sept. 12, 1951.

(235 P. 2d 722.)

324

[redacted]

Turner M. King and Carloss Wadlington, Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Peter Walker, was charged by an information filed in the district court of Pontotoc county with the crime of murder; was tried; convicted of manslaughter in the first degree; and pursuant to the verdict of the jury was sentenced to serve twelve years imprisonment in the State Penitentiary; and has appealed.

The information charged the defendant with taking the life of one Herbert Brown on July 9, 1949, by shooting him with a forty-four caliber Winchester rifle. The defendant, the deceased, and most of the witnesses were negroes. The deceased lived in a three room house in the negro section of the city of Ada. His primary business seemed to be that of a dispenser of illicit alcoholic liquor, known to the negroes and referred to in the testimony as "Choc Beer". The record shows that on July 9, 1949, the defendant, along with several other negroes, was at the premises of the deceased drinking beer. A Mexican vendor of candies, ice cream, hot tamales, and other items, came by the Brown home and the defendant bought an Eskimo pie. A short while later the Mexican was in the kitchen of the Brown home drinking some beer when he was accosted by the defendant and accused of failing to give the defendant the change which was due him at the time of the purchase of the Eskimo pie by the defendant. The argument which ensued attracted the attention of the deceased, Herbert Brown, who in turn had some angry words with the defendant, which ended in Brown directing the defendant to leave his premises. The witnesses for the defendant testified that Brown chased the defendant from the Brown home with a large butcher knife.

Mrs. Brown, wife of the deceased, and the next door neighbor, Mary Sandridge, testified for the state that the defendant came to the Brown home about

9:00 p. m. Mrs. Brown testified that she had just walked into the house to fix the bed preparatory to retiring when she heard Peter Walker's voice outside near the front porch, where her husband was sitting; that the defendant said, "Oh, God damn it, no need of you running", and that she heard a shot, and walked to the door and her husband was in the front door and said, "Oh, I am shot". She testified that the deceased, Herbert Brown, was unarmed. Mrs. Sandridge testified that she was sitting on the porch of the house next to the Brown home and heard Peter Walker say "Mr. Herbert, what in the hell did you want to mess with me this afternoon like you did for?"; that she heard a shot and that at the time of the shot the deceased was about half way in the front door.

The medical testimony showed that the deceased was shot one time in the right side and that the shot ranged slightly upward towards the left; that it entered slightly to the right of the abdomen and came out on the left side and went through his wrist which caused his death in just a few moments.

Ernest Miers, a deputy sheriff, testified that on the night of the shooting he talked to the defendant and the defendant said he had killed Herbert Brown and that he intended to kill him and went to his home for that purpose.

Several witnesses testified for the defendant and related the circumstances surrounding the disagreement between the defendant and deceased at the home of the deceased in the afternoon, and their testimony was that the deceased, while armed with a butcher knife, chased the defendant from his home.

The defendant testified that after he had been chased from the home of the deceased that Maceo McKinney told him about 6:00 p. m. to be careful that Herbert Brown was going to kill him, and a short time later Floyd Doyle told him the same thing; that he then decided to go over to the home of deceased and talk over the matter; that he armed himself with a forty-four rifle for protection, and walked up to the porch of the deceased to try to straighten things out; that the deceased was sitting on the porch; the defendant said, "Mr. Herbert," and the deceased said, "Who is that?" and defendant said, "It is Peter", and deceased said, "You black son of a bitch; I told you not to come back over here. I told you I was going to kill you."; that deceased then got up from his chair and started into the house and opened the screen door and started reaching inside with his left hand; that he thought defendant was reaching for a shotgun which he kept in the house so he shot at deceased in self-defense. On cross-examination the defendant admitted that he had served two terms in the state penitentiary, once for grand larceny and the other for assault with intent to kill.

It is first contended that the trial court erred in overruling the application of the defendant for continuance on account of the absence of alleged material witnesses for the defendant. These two witnesses were Maceo Mc-Kinney and Floyd Doyle. The application stated that the defendant was informed that McKinney was picking cotton near Eloy, Arizona, but that he would return to Ada, Oklahoma, at the completion of the cotton picking season; that the witness Floyd Doyle was supposed to be in California but was expected to return before the first of the year. Deputy sheriff Miers testified for the state at the hearing that he had a felony warrant for Doyle; that he was a fugitive from justice and that the sheriff's office had not been able to locate him. The record further showed that Maceo McKinney had testified at length as a witness for the defendant at the hearing on application for bail, and that a transcript had been prepared of his testimony, and the court permitted the defendant to read this transcript of the record as the deposition of McKinney.

We have considered the record in connection with this contention of the accused. The testimony of McKinney is in the record together with that of Ray McKinney, Miami McKinney, Van McKinney, and William Jones, all of whom were present at the Brown house and all of whom testified to substantially the same things. His testimony was cumulative, but in view of the fact that it was presented to the jury in the form of a deposition, the defendant certainly has no ground for complaint and we do not feel that the court abused its discretion in denying a continuance. There, of course, was no proper showing that the witness Doyle would ever be present in the future at any trial of the case since he was a fugitive. Presley v. States, 76 Okla. Cr. 120, 134 P. 2d 595; Andrews v. State, 84 Okla. Cr. 104, 179 P. 2d 491.

The second proposition presented on behalf of the defendant is the alleged error of the court in refusing to declare a mistrial on account of alleged improper argument by the assistant county attorney during his argument to the jury, wherein he referred to the defendant as a negro.

The record shows that at the time this question arose the argument of the assistant county attorney was not being taken by the court reporter. However, at the hearing on the motion for new trial evidence was introduced by counsel for defendant which showed that the prosecutor referred to the defendant as a negro. The trial court, after the question was presented, made a finding that the assistant county attorney in his argument to the jury referred to the witnesses, who had been sworn and testified on both sides, as being negroes and that at the time the objection was made by Mr. Wadlington, as counsel for defendant, the prosecutor did refer to defendant as a negro; that the defendant's counsel likewise in making his argument to the jury stated at numerous times that the witnesses in the case were all negroes. The record showed that the jury which tried the accused was an all white jury. Counsel for defendant cite in support of this assignment the case of Morehead v. State, 12 Okla. Cr. 62, 151 P. 1183, 1190, wherein this court reversed a conviction of a negro charged with murder of a white man, who was being tried by a jury of white men, wherein the county attorney in his argument referred to the defendant as "this black murderer", and again as "this coal-black murderer". This court construed such language as being improper and an appeal to race prejudice. To similar effect is the case of Hamilton v. State, 38 Okla. Cr. 62, 259 P. 168.

In both of the cases relied upon by the defendant the accused was a negro charged with a criminal offense upon a white man, and we concluded that a reference to the race of the accused being tried to an all white jury was an appeal to racial prejudice. We do not think that the instant situation is comparable to those, because in the instant case the accused and the deceased were both negroes as well as most of the witnesses. In fact all of the witnesses except the white men who were called in for an investigation after the crime had been committed were members of the negro race. Counsel for defendant, as well as the prosecutor, referred to the negro witnesses. Evidently he did not think that such reference by him prejudiced his client or he would not have made such reference. In determining this question we have viewed the entire record. Although the deceased by his actions during the altercation in the afternoon showed that he was a man with a violent temper, still we are faced with the fact that the defendant armed himself with a deadly weapon and returned to the home of the deceased in the nighttime and shot him while he was unarmed. He voluntarily while armed entered into an altercation, and under the record was guilty of murder and should have been given life imprisonment. The fact that the jury was so lenient that they only found him guilty of the included crime of manslaughter in the first degree and assessed the

punishment at twelve years imprisonment, appears conclusive to us that the arguments of the prosecutor had no prejudicial effect.

It is next contended that the court erred in admitting incompetent and prejudicial evidence over objection of counsel for defendant. This proposition is directed at the testimony of the deputy sheriff Miers concerning alleged statements given by the defendant, Peter Walker, the night of his arrest in the office of the county attorney. It was brought out by counsel for the defendant that at the time the questions were asked and the answers given that the county attorney had a stenographer present who was taking down the statements made by the defendant, and that she later attempted to make a transcript of such statements. When deputy sheriff Miers was asked concerning statements made by the accused counsel for the defendant objected on the ground that the stenographer's transcript was the best evidence of what occurred. The county attorney stated to the court that he did not have a complete transcript as the stenographer said that the defendant had talked so fast that she was unable to get all of his statement.

There would have been some merit to this contention of counsel if the witness Miers was attempting to testify to some fact which he had learned from reading the transcript prepared by the stenographer. In such a case the transcript would have been the best evidence of its contents and secondary evidence would have been inadmissible without some primary showing that the best evidence was not obtainable. Ellington v. State, 94 Okla. Cr. 26, 229 P. 2d 902. However, the witness Miers was not attempting to testify to anything that he had read from the transcript. He was testifying concerning a statement which he had heard the defendant make in his presence. This oral testimony was supplemental to the alleged transcript prepared by the stenographer, and oral testimony of the statement of the defendant heard by the witness was primary evidence and admissible. Dubois v. State, 22 Okla. Cr. 308, 210 P. 1043.

The last proposition presented is that the sentence is excessive and the result of passion and prejudice engendered against the defendant. As hereinabove stated, the defendant under the record could easily have been found guilty of the crime of murder. We do not believe the sentence is excessive even under the testimony of the defendant. The judgment and sentence of the district court of Pontotoc county is affirmed.

BRETT, P. J., and POWELL, J., concur.